# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2757

_____

East Iowa Plastics, Inc.

*Plaintiff - Appellee*

v.

PI, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: February 11, 2016
Filed: August 11, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This trademark case involves a challenge to the district court's award of attorney's fees to the plaintiff. We find that the district court lacked jurisdiction to

cancel the defendant's federal trademark registrations, and that as a result, the plaintiff was not entitled to attorney's fees.[1]

I

The history of this case begins not with the parties, but with a company called KenTech, which was the owner of the "PAKSTER" trademark in the late 1990s. KenTech used the mark in connection with the molded plastic goods it manufactured for use in the egg and poultry industries. Two commonly-used methods of manufacturing plastic goods are thermoforming and injection molding: the former involves heating a flat sheet of plastic until pliable and then forming it over a mold, while the latter involves injecting heated plastic into a closed mold. See J. Scott Smith & Y.H. Hui, Food Processing: Principles and Applications 110 (2008). KenTech's operations used both techniques.

KenTech manufactured its thermoformed PAKSTER goods in Independence, Iowa, and its injection molded PAKSTER products in Hopkinsville, Kentucky, until 1997, when it sold both product lines. Its thermoformed goods line was sold to a company called East Iowa Plastics (EIP), also located in Independence. The sale was accomplished through an Asset Purchase Agreement (APA), which transferred to EIP KenTech's entire manufacturing operation in Iowa, including all the assets comprising its manufacturing facility.

Among the assets transferred to EIP by the APA were KenTech's rights to the PAKSTER trademark. But the APA included a "license back," which provided that KenTech would be granted "a license to use the 'Pakster' name and mark in connection with the production and sale of injection molded plastic products." The

---

[1]The source of our jurisdiction is 28 U.S.C. § 1291.

license back specified that the license was to be "exclusive . . . within North America," "perpetual and irrevocable," "royalty-free," and "freely assignable."

The assignability provision did not go unused. Shortly afterwards, KenTech sold its injection molds, which were imprinted with the PAKSTER mark, to PI, a company based in Athens, Tennessee. For the next several years, EIP proceeded to make PAKSTER-branded products using the thermoforming method, while PI made PAKSTER-branded products using injection molding. For the most part, the two companies made different products under the PAKSTER brand: EIP made ventilation doors, feeder trays, and a light hood, while PI made chicken coops, egg baskets, a chick box, and plastic pallets. The one product both companies made, albeit using different manufacturing methods, was egg trays, which the parties and the district court refer to as "egg flats."

Ten years later, PI applied for and acquired two trademark registrations from the United States Patent and Trademark Office: one for the word "PAKSTER" itself and the other for an image of a rooster with the word "PAKSTER." In filling out both applications, PI certified – falsely, as it now acknowledges – that to the best of its "knowledge and belief no other person, firm, corporation, or association ha[d] the right to use the mark in commerce." In reality, PI had long been aware of EIP's use of the PAKSTER mark.

On January 27, 2012, PI sent EIP a cease and desist letter, accusing it of trademark infringement and unfair competition under the Lanham Act for using the "PAKSTER" trademark. It threatened legal action unless EIP responded with written assurances that it would stop using the PAKSTER trademark. EIP responded on March 5, 2012, explaining that it had bought the PAKSTER trademark from KenTech and attaching a copy of the APA. PI replied on April 3, 2012, contending that because of the APA's license back, and the fact that PI, unlike EIP, possessed a

federally-registered trademark, EIP had no right to use the PAKSTER mark in connection with either thermoformed or injection molded products.

Shortly thereafter, PI offered to sell its PAKSTER molds to EIP for about $3 million. When EIP refused to buy, PI sent a third cease and desist letter on December 4, 2012, repeating the claims in its second letter and again threatening suit if EIP refused to stop using the PAKSTER mark.

But instead of PI suing EIP, on December 10, 2012, EIP sued PI, bringing claims for: (1) cancellation of the federal registrations of the PAKSTER marks and damages under sections 37 and 38 of the Lanham Act, 15 U.S.C. §§ 1119, 1120; (2) false statements and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark infringement, misappropriation, misuse and unfair competition under section 43(a) of the Lanham Act and common law; (4) conversion; and (5) breach of contract. It additionally sought a declaration that it owned the PAKSTER trademark.

On January 30, 2013, PI filed counterclaims for trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition under section 43(a) of the Lanham Act. On March 12, 2015, about a month before trial was scheduled to begin, PI voluntarily dismissed its counterclaims with prejudice. EIP then dismissed its breach of contract claim on April 3, 2015. The case proceeded to trial on April 13, 2015. At the end of the trial, the district court granted PI's motion for judgment as a matter of law on claims (2)–(4) above, finding that the evidence was insufficient for the jury to award damages.

The district court then issued findings of fact and conclusions of law. As relevant to this appeal, it cancelled PI's two federal trademark registrations and found that EIP was the prevailing party "because it established its ownership of the Trademark." It held that PI's "actions here were deliberate, willful, and taken in bad

-4-

faith, making this an exceptional case under section [35] of the Lanham Act, warranting reasonable attorneys' fees." And it further held that fees were "also warranted under section [38] due to fraud on the PTO." It finished by awarding EIP attorney's fees of $585,000 and denying EIP an injunction.

PI now appeals the grant of attorney's fees, arguing that section 38 of the Lanham Act does not permit fee shifting, and that EIP did not prevail on its section 35 claims.

## II

In awarding attorney's fees, the district court cited both section 38 and section 35 of the Lanham Act. We address each of these two potential bases for an award of attorney's fees in turn, and then discuss whether EIP is entitled to attorney's fees based on obtaining a declaration that it owned the PAKSTER trademark.

## A

Section 38 of the Lanham Act, codified at 15 U.S.C. § 1120, prohibits registering a trademark with the United States Patent and Trademark Office by means of a false or fraudulent declaration or representation. The statute reads in full:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. The district court found that although PI had violated section 38, EIP had not suffered any damages from that violation and was not entitled to an injunction. EIP does not challenge either conclusion on appeal.

Despite finding no damages, the district court went on to cancel PI's federal registrations of the PAKSTER trademarks as a remedy for the section 38 violation. See 15 U.S.C. § 1119 (permitting courts to cancel trademark registrations in an action involving a registered mark). EIP argues that it therefore prevailed on its section 38 claim, and that this provides a basis for the district court's award of attorney's fees. Although neither party raised any jurisdictional issues in their initial briefing, we asked them to file supplemental briefs on whether the district court had jurisdiction to cancel the federal registrations. See Huggins v. FedEx Ground Package Sys., Inc., 566 F.3d 771, 773 (8th Cir. 2009) ("We are obligated to consider *sua sponte* our jurisdiction to entertain a case where, as here, we believe that jurisdiction may be lacking."). Having carefully reviewed the briefs, we conclude that it did not.[2]

Article III of the Constitution confines federal courts to deciding "Cases" or "Controversies," a requirement that has been interpreted to require parties suing in federal court to have suffered a "concrete and particularized injury" in order for a federal court to have jurisdiction to decide their claims. Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013). At the outset of a suit, a nonfrivolous claim of injury is enough to establish jurisdiction, even if the possibility exists that the plaintiff will ultimately not be able to succeed in its claim – else courts would have to resolve the merits of the claim in order to determine whether they had jurisdiction to hear it in the first place. See Bell v. Hood, 327 U.S. 678, 682 (1946); City of St. Louis v. Dep't of Transp., 936 F.2d 1528, 1532 (8th Cir. 1991). It is equally true, however, that standing must "persist throughout all stages of litigation," Hollingsworth, 133 S. Ct. at 2661, and must be demonstrated "separately for each form of relief sought," Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167,

---

[2]We grant EIP's motion for leave to file a supplemental reply brief. We deny as moot EIP's motion to supplement the record on appeal with an excerpt from the trial transcript, since the excerpt is available as document 151 in the district court's docket. "Parts of the record may be relied on by the court or the parties even though not included in the appendix." Fed. R. App. P. 30(a)(2).

185 (2000) (noting that a plaintiff can have standing to pursue damages but not injunctive relief).

EIP's standing to seek cancellation of the trademark under section 37 of the Lanham Act, codified at 15 U.S.C. § 1119, was dependent on its section 38 claim, because section 37 only provides a remedy for some other violation of the trademark laws, not an independent cause of action. See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 599 (9th Cir. 2014); Nike, Inc. v. Already, LLC, 663 F.3d 89, 98 (2d Cir. 2011), aff'd on other grounds, 133 S. Ct. 721 (2013); Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992); Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 758–59 (Fed. Cir. 1987); 5 McCarthy on Trademarks § 30:110 (2010). Once the district court had determined that EIP did not suffer any damages from PI's violation of section 38, there was no further basis for EIP to have standing to seek cancellation of the PAKSTER registrations.[3] In so holding, we do not mean to suggest that monetary

---

[3]Because EIP sought trademark cancellation solely as a remedy for PI's violation of section 38 of the Lanham Act by submitting a false or fraudulent declaration to the PTO, we need not consider whether it would have standing to seek cancellation based on PI's counterclaims for trademark infringement or unfair competition, or based on PI's threats to sue for trademark infringement. In any event, we think there is no longer any realistic possibility that PI could sue EIP for infringing the PAKSTER trademark in connection with EIP's thermoformed plastic products, given the dismissal with prejudice of its counterclaims, see Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999), and the district court's conclusion – unchallenged on appeal – that EIP has the right to use the PAKSTER trademark in connection with its products. In its supplemental brief, PI agrees that the district court's conclusions vitiate any such threat. See Already, LLC v. Nike, Inc., 133 S. Ct. 721, 728 (2013) ("Nike, having taken the position in court that there is no prospect of such a [future infringing] shoe, would be hard pressed to assert the contrary down the road."). So even if PI's threats of suit gave EIP standing to pursue trademark cancellation at the outset of this suit, that basis for standing is now absent.

damages are the only possible basis for EIP's standing. But we see no evidence even of non-monetary injuries to EIP.

It may well be that PI's false and fraudulent declaration misled the PTO into registering its trademarks. And it is plausible to suppose that there is some generalized injury that results from the PTO's Register of Trademarks containing marks that it shouldn't contain. But any such injury is not particular to EIP, and cannot support its standing to bring a section 38 suit. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016) (holding that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized'" (citation omitted)). To paraphrase the Supreme Court, "although a suitor may derive great comfort and joy from the fact that the [Patent and Trademark Office] is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998); see also Spokeo, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."); Already, 133 S. Ct. at 731 (rejecting the notion that competitors have standing to seek the cancellation of a registration simply because it was unlawfully obtained).

Apart from this generalized grievance, which is insufficient to create standing, the record does not show that EIP suffered any injury from PI's false or fraudulent trademark registrations. A particularized injury might result, for example, if EIP had tried to apply for its own federal registration for the PAKSTER trademark, and been impeded by PI's preexisting registrations. Cf. Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 349–50 (9th Cir. 1984). But Bret Kivell, the co-owner of EIP,

testified that EIP had never applied for a trademark registration because he felt it wasn't necessary, so EIP could not have suffered any injury of this sort.

Another conceivable form of non-monetary injury is damage to the goodwill associated with EIP's trademark, for we have recognized that loss of goodwill may not be easily quantifiable. See Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003). But here the district court made no finding that EIP suffered any loss of goodwill, even a loss insusceptible of exact calculation, and EIP points to no evidence in the trial record that it did.

EIP also suggests that standing may be found based on its being forced to litigate this suit. But to give rise to standing, an injury must be "fairly traceable to the defendant's allegedly unlawful conduct." Allen v. Wright, 468 U.S. 737, 751 (1984). To the extent EIP's argument is based on having to defend against PI's counterclaims, there is no indication that any such injury stems from the allegedly unlawful action: PI obtaining trademark registrations by making a false or fraudulent declaration to the PTO. That's because the Lanham Act protects both registered and unregistered trademarks, see Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992), so "even without its registrations, [PI] still would have had a substantially similar Lanham Act cause of action," Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 989 F.2d 985, 991 (8th Cir. 1993), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014). It's true that PI brought counterclaims under both sections 32 and 43(a), and the former section allows suit only by owners of registered trademarks. See 15 U.S.C. § 1114; Two Pesos, 505 U.S. at 768. But there is no indication that EIP suffered additional injury from being forced to defend against both claims, as compared to defending only against the latter.[4] In other words, EIP would have faced an essentially identical

---

[4]To the extent EIP's argument is that it has standing based on having to litigate the suit it itself chose to bring, we do not think it can generate its own Article III

counterclaim even if PI had never obtained a trademark registration by fraud, so any injury based on litigating counterclaims is not "fairly traceable" to that fraud.

Moreover, the notion that being forced to litigate the suit is injury enough for EIP to have standing to pursue cancellation of PI's trademark registrations is difficult to square with the Supreme Court's decision in Already. In that case, Nike filed a trademark infringement case against a company called Already, which filed a counterclaim seeking to cancel Nike's trademark. See 133 S. Ct. at 725. Nike then issued a covenant not to sue Already for trademark infringement or unfair competition based on its existing footwear designs or future designs that constituted a "colorable imitation" of its current designs, and moved to dismiss both its claims and Already's counterclaim with prejudice. See id. The Supreme Court held that Nike's actions deprived Already of standing to pursue its trademark cancellation counterclaim. See id. at 729. If EIP were right that standing to seek cancellation could be based on having been forced to defend against an infringement suit, however, Already would presumably have had standing.

We are thus forced to conclude that the district court lacked jurisdiction to cancel the federal registrations of PI's trademarks, and vacate the cancellation. Having obtained no damages, injunction, or cancellation from its section 38 claim, there is no basis for concluding that EIP was the prevailing party on that claim, which EIP agrees is a precondition to receiving attorney's fees. As a result, we need not reach PI's argument that attorney's fees are not available under section 38.

---

injury in this fashion. "An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim," Steel Co., 523 U.S. at 107 (quotations and alteration omitted), and the same is true of an interest in seeking the cancellation of a trademark. Otherwise, anyone would be able to establish standing to cancel a trademark based simply on their bringing suit to cancel the trademark.

-10-

B

EIP also argues that it prevailed with respect to PI's infringement and unfair competition counterclaims under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), because it succeeded in having them dismissed with prejudice before the trial. Whether a party is a "prevailing party" is a question of law that we review de novo. DocMagic, Inc. v. Mortgage P'ship of Am., L.L.C., 729 F.3d 808, 812 (8th Cir. 2013).[5]

Attorney's fees could in principle be available for successfully defending against infringement and unfair competition counterclaims based on section 35 of the Lanham Act, which provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party" when there is "a violation of any right of the

_____

[5]EIP contends that the determination of the prevailing party must be reviewed for abuse of discretion following the Supreme Court's decision in Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., which held that "an appellate court should apply an abuse-of-discretion standard in reviewing *all aspects of*" a district court's attorney's fees determination under 35 U.S.C. § 285, the statutory provision authorizing fee shifting in patent cases. 134 S. Ct. 1744, 1749 (2014) (emphasis added). But Highmark concerned only the standard of review that applied to a district court's determination that a case was "exceptional," not the determination of which party was the "prevailing party," and when read in context the quoted language therefore refers only to the former determination. See id. at 1748; see also Illinois v. Lidster, 540 U.S. 419, 424 (2004) (noting that "general language in judicial opinions" is often read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering"); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."). We note that the Federal Circuit, whose decision was under review in Highmark, has continued since that case to review de novo a district court's determination of whether a party was the "prevailing party" under 35 U.S.C. § 285. See SSL Servs., LLC v. Citrix Sys., Inc., 769 F.3d 1073, 1086 (Fed. Cir. 2014).

-11-

registrant of a mark registered in the Patent and Trademark Office [or] a violation under section [43(a)]." 15 U.S.C. § 1117(a). EIP's success with respect to these counterclaims is not sufficient to make it the prevailing party, however, because PI could with equal justice claim to be the prevailing party based on its winning judgment as a matter of law on EIP's infringement, false statement, and unfair competition claims. Each party brought virtually identical claims with respect to the same trademark, and neither was successful. The Supreme Court "has said that the 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties,'" and there is no such alteration where, as here, the district court essentially restored the status quo ante. CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) (quoting Tex. State Trachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93 (1989)). Where the parties achieve a dead heat, we don't see how either can be declared the "prevailing party." See Kropp v. Ziebarth, 601 F.2d 1348, 1358 n.27 (8th Cir. 1979) (per curiam) ("[W]hen a defendant counterclaims for affirmative relief and neither party prevails on its claim, it is quite appropriate to deny costs to both parties."); cf. S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., 712 F.3d 397, 400–01 (8th Cir. 2013) (allowing district court to find no prevailing party under Nevada law). But see Shum v. Intel Corp., 629 F.3d 1360, 1367 (Fed. Cir. 2010) (holding that "[a] court must choose one, and only one, 'prevailing party' to receive any costs award" under Rule 54(d) of the Federal Rules of Civil Procedure). Because EIP was not the "prevailing party" with respect to PI's trademark infringement and unfair competition counterclaims, it is not entitled to attorney's fees under section 35 of the Lanham Act.

C

Finally, EIP argues that it should obtain attorney's fees because it successfully obtained a declaration that it owned the PAKSTER trademark. We feel we must remand the case for further consideration of this issue by the district court. Though the district court stated that EIP was the prevailing party "because it established its

-12-

ownership of the Trademark," its findings regarding ownership leave some questions unanswered. The statements in its findings of fact and conclusions of law that the sale of the molds "transferred to [PI] the right to use [the trademark] only in connection with the molds," and that "[EIP] owns the Trademark for use in manufacturing and selling products in the egg and poultry business, subject only to [PI's] license to use the Trademark to manufacture and sell egg flats made by the injection molding method," suggest that EIP owned the trademark subject to a license to PI. But the district court's opinion also states that "[t]he sales by KenTech of the Trademark to both [EIP] and [PI] left the Trademark jointly owned, which the law discourages but accepts if, as here, the parties choose this arrangement," suggesting that both EIP and PI were joint owners.

Also unclear is the scope of the license to PI, assuming the court found PI to be a licensee rather than a joint owner. The district court referred to PI's "license to use the Trademark to manufacture and sell *egg flats* made by the injection molding method," but as noted above, the license back found in the APA extended not just to egg flats, but to "the production and sale of injection molded plastic products" in general. No basis for the limitation to egg flats appears in the opinion, and we think it possible the court mentioned egg flats only because it was the sole product manufactured by both EIP and PI. Whether attorney's fees are available for EIP's declaratory judgment claim may depend on how these ambiguities are resolved, and as the ambiguities are factual in nature, the district court is best placed to resolve them.

Remand is especially appropriate because the ownership of the PAKSTER trademark turns on state contract law, not federal law. See Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 917 (7th Cir. 2001); Gibraltar, P.R., Inc. v. Otoki Group, Inc., 104 F.3d 616, 618–19 (4th Cir. 1997); Postal Instant Press v. Clark, 741 F.2d 256, 257 (9th Cir. 1984); cf. T.B. Harms Co. v. Eliscu, 339 F.2d 823, 826 (2d Cir. 1964) (Friendly, J.) ("[T]he federal grant of a patent or

-13-

copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law."). In a state law dispute, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies. See FutureFuel Chem. Co. v. Lonza, Inc., 756 F.3d 641, 649 (8th Cir. 2014). On appeal, the parties have not briefed the availability of attorney's fees under the relevant state law (or even which state's law governs), so we believe it would be prudent for the district court to address the issue in the first instance after soliciting briefing from the parties.

III

Our conclusions should not be read as condoning PI's knowing misrepresentations to the Patent and Trademark Office. But on the facts in this case, because the district court lacked jurisdiction to cancel PI's trademark registrations, EIP did not prevail on any claim that entitled it to attorney's fees. We note that EIP may be able to seek cancellation of PI's trademark registrations by filing a petition with the PTO. See 15 U.S.C. § 1064.

We vacate the district court's cancellation of PI's trademark registrations, reverse the district court's grant of attorney's fees to EIP, and remand for further proceedings consistent with this opinion.

———————————————