# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-4574

———————————————

East Iowa Plastics, Inc.

*Plaintiff - Appellee*

v.

PI, Inc.

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

——————————

Submitted: March 13, 2018
Filed: April 30, 2018

——————————

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

This trademark dispute returns to us after proceedings on remand. In the previous appeal, E. Iowa Plastics, Inc. v. PI, Inc., 832 F.3d 899 (8th Cir. 2016), we asked the district court to address state-law questions pertaining to the availability of attorney's fees and the ownership of a contested trademark. Id. at 907–08. The district court entered orders on those questions, and this appeal followed.

# I. Background

The underlying facts are more fully laid out in our first opinion. <u>Id.</u> at 901–02. As relevant to the present appeal, the parties in this case—East Iowa Plastics (EIP) and PI—both purchased manufacturing equipment from a company called KenTech. KenTech manufactured plastic goods for the poultry industry using injection molding (hot liquid plastic injected into a mold) and thermoforming (heated plastic sheet pressed into a shape by a mold). KenTech's products included chicken coops, egg baskets (used to make the containers eggs are sold in at the grocery store), and egg flats (used to transport eggs before they are packaged for sale). KenTech's poultry products were branded with a registered trademark: PAKSTER.

KenTech was getting out of the poultry business, and was looking to sell its poultry products. First, EIP entered into a written asset purchase agreement (APA) to buy KenTech's thermoform production equipment. The APA also transferred ownership of the PAKSTER mark to EIP, but KenTech retained an irrevocable license to use the mark "in connection with the production and sale of injection molded plastic products." A short time later, KenTech sold its injection molds for chicken coops and egg baskets to PI, along with sundry completed products including egg flats. There was no written contract of sale between KenTech and PI, and KenTech did not expressly assign PI its PAKSTER license. However, the injection molds that PI bought from KenTech were inscribed with the PAKSTER mark. About a year after acquiring KenTech's molds, PI bought injection molds for egg flats from a different company.

Ten years passed. During that time, EIP's registration of the PAKSTER mark lapsed. Some time afterward, PI applied to register "PAKSTER" with the United States Patent and Trademark Office (PTO). As part of its application, PI falsely certified that no other person or entity was using the PAKSTER mark. PI and EIP

maintained peaceful coexistence for several years, which came to an end when a proposed deal for EIP to acquire PI's injection molds fell through.

EIP sued PI under the Lanham Act for trademark infringement and unfair competition. See 15 U.S.C. § 1125(a). EIP also sought a declaration that PI's registration of the PAKSTER mark was invalid. PI counterclaimed for other Lanham Act violations. After a trial, the district court found that PI had defrauded the PTO by falsely certifying that it was the only company using the PAKSTER mark. The court also found that, although PI had acted in bad faith, EIP had not proved any resulting damages. The district court then cancelled PI's registration of the PAKSTER mark and awarded EIP $585,000 in attorney's fees under the Lanham Act. See 15 U.S.C. § 1117(a).

In the first appeal, we concluded that EIP lacked standing to seek cancellation of PI's mark because EIP had failed to establish any damages. E. Iowa Plastics, 832 F.3d at 903–06. Accordingly, we vacated the cancellation. Id. at 906. As to attorney's fees, we determined that EIP's lack of standing on the cancellation issue meant that it was not a "prevailing party," and so was not entitled to Lanham Act fees. See id. at 906–07.

We remanded two state-law questions to the district court. We asked the district court to address EIP's claim that it was entitled to attorney's fees under state law, and to clarify the scope of the parties' interests in the PAKSTER mark (a question of state contract law). Id. at 907–08.

On remand, the parties agreed that Iowa law applied. The district court determined that EIP was entitled to $400,000 in Iowa common law attorney's fees.

E. Iowa Plastics, 2016 WL 7406705, at *2 (N.D. Iowa Dec. 9, 2016).[1] The district court also found that EIP was the owner of the PAKSTER mark, and that PI owned a license "to use or sell *only* the product of the [injection] molds, egg flats, [and] nothing more." E. Iowa Plastics, 2016 WL 6650848, at *2 (N.D. Iowa Nov. 9, 2016). PI appeals.

## II. Discussion

In the present appeal, PI argues that the district court improperly awarded attorney's fees to EIP under Iowa common law, and erred in determining the scope of its license. We review the district court's application of state law de novo, and its fact finding for clear error. Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1434 (8th Cir. 1997); Prince v. Sargeant, 960 F.2d 720, 720 (8th Cir. 1992). On state-law issues, we are bound by the decisions of the state's highest court. Washington v. Countrywide Home Loans, Inc., 655 F.3d 869, 873 (8th Cir. 2011).

### A.

We begin with the district court's award of attorney's fees to EIP under Iowa common law. Iowa follows the American rule, which requires each party to bear its own litigation expenses. Thornton v. Am. Interstate Ins. Co., 897 N.W.2d 445, 474

---

[1]EIP cites passages in the district court's orders to argue that the district court properly reinstated its award of attorney's fees under the Lanham Act. See E. Iowa Plastics, 2016 WL 7406705, at *1–2 ("EIP proved that it had in fact been injured by [PI's] actions . . . . [A]ctions to remove clouds on title to intellectual and personal property are . . . 'cases and controversies' for which federal courts have jurisdiction."). But the law of the case forecloses EIP's argument that the district court was somehow empowered to overrule our previous opinion. See E. Iowa Plastics, 832 F.3d at 903–06; see also United States v. Castellanos, 608 F.3d 1010, 1016–17 (8th Cir. 2010).

(Iowa 2017). Under that rule, "attorney fees are recoverable only [when authorized] by statute or under a contract." Miller v. Rohling, 720 N.W.2d 562, 573 (Iowa 2006) (quoting Costello v. McFadden, 553 N.W.2d 607, 613 (Iowa 1996)). Neither contract nor statute authorizes fees in this case, so EIP's only option is a rare common law exception. See Thornton, 897 N.W.2d at 474.

In Iowa, "a plaintiff seeking common law attorney fees must prove that the culpability of the defendant's conduct . . . rise[s] to the level of oppression or connivance to harass or injure another." Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc., 510 N.W.2d 153, 159–60 (Iowa 1993). Conduct is oppressive when it "is difficult to bear, harsh, tyrannical, or cruel." Thornton, 897 N.W.2d at 475 (cleaned up). Connivance "requires voluntary blindness [or] an intentional failure to discover or prevent the wrong." Id. (cleaned up). Such conduct is "[m]ore than mere bad faith," id., and must be more extreme than the "willful and wanton disregard for the rights of another" required for punitive damages. Hockenberg, 510 N.W.2d at 159–60 (referring to Iowa's punitive damages statute, Iowa Code § 668A.1).

The Supreme Court of Iowa has applied this standard on at least eight occasions, and denied common law attorney's fees in all but one.[2] In the one outlier case, a county treasurer had filed suit to collect unpaid taxes. Williams v. Van Sickel, 659 N.W.2d 572, 575 (Iowa 2003). The defendant taxpayers asserted an affirmative defense of equitable estoppel, which applies when "the opposing party

---

[2]The court declined to award fees in the following cases: Thornton, 897 N.W.2d at 475–76; Dier v. Peters, 815 N.W.2d 1, 10 & n.4 (Iowa 2012); Fennelly v. A-1 Mach. & Tool Co., 728 N.W.2d 163, 181 (Iowa 2006); Miller, 720 N.W.2d at 573; Wolf v. Wolf, 690 N.W.2d 887, 896 (Iowa 2005); Hefel ex rel. D.M.H. v. Thompson, 577 N.W.2d 643, 647–48 (Iowa 1998); and Remer v. Bd. of Med. Exam'rs, 576 N.W.2d 598, 603 (Iowa 1998).

-5-

misrepresented . . . material facts" and there was "detrimental reliance by the party to whom the representations were made." Id. at 580. In an effort to foreclose a showing of reliance, the county treasurer (an elected public official) fabricated two letters that she claimed she had sent to the taxpayers. Id. at 580–81. She then "compounded the fraud by offering [the letters] as evidence at trial. . . . *At this point* . . . the treasurer crossed the line" into oppressive or conniving conduct. Id. at 581 (emphasis added).

In this case, the district court based its fee award on three facts. First, the court found that PI "conniv[ed] with its Chicago attorney [by] having him sign . . . trademark applications" that falsely declared that no other company was using the PAKSTER mark, even though PI knew full well that EIP was doing so. E. Iowa Plastics, 2016 WL 6650848, at *1. Second, the district court determined that PI had its lawyer sign the applications in an "attempt[] to insulate [PI] and its officers, who ordinarily would sign the application . . . ." Id. Third, the court found that PI "wait[ed] five years, after which the fraudulently obtained trademarks became 'incontestable'" under the Lanham Act, and then "sent [EIP] three harassing and threatening cease-and-desist letters, [which PI has] never withdrawn." Id.

As an initial matter, EIP concedes that PI sent its first cease-and-desist letter four years and one month after registration. Because marks become incontestible five years after registration, see 15 U.S.C. § 1065, the district court clearly erred in finding that PI laid in wait until its mark became incontestable.

Applying Iowa law to the remaining facts—which we assume are true despite limited evidence in the record—we conclude that EIP is not entitled to common law attorney's fees. PI's misrepresentation to the PTO was certainly improper, but its conduct did not rise to the level of being tyrannical, cruel, or harsh. It is difficult to analogize PI's actions to the county treasurer's misconduct in Van Sickel; PI may

have lied to the PTO, but it did not manufacture evidence to gain the upper hand in a judicial or administrative proceeding. Nor did it wait to initiate contact with EIP until it had reached the safe harbor of incontestability. The evidence before the district court suggests strongly that PI acted in bad faith, but bad faith is not enough to support an award of Iowa common law attorney's fees. Thornton, 897 N.W.2d at 475. Accordingly, we reverse the award of attorney's fees to EIP.

## B.

The district court found that PI's license was limited to injection-molded egg flats. PI argues that it also owns a license for injection-molded chicken coops and injection-molded egg baskets. EIP appears to concede that the district court erred in setting the scope of PI's license. But as to the egg flats, EIP did not file a cross appeal, and so cannot challenge the district court's holding that PI's license covers egg flats. See Bethea v. Levi Straus & Co., 916 F.2d 453, 456 (8th Cir. 1990) ("It is well-settled that failure to file a cross-appeal prohibits an appellee from attempting to enlarge [its] rights or to lessen [its] adversary's rights."). As to the egg baskets and chicken coops, EIP does not make a sufficiently specific, affirmative argument that we should limit PI's license to either (or both) of those products. See Fed. R. App. P. 28(a)(8)(A). Therefore, the briefs and oral arguments lead us to conclude that PI owns a license to use the PAKSTER mark in connection with injection-molded chicken coops, injection-molded egg baskets, and injection-molded egg flats.

## III.

We reverse the judgment of the district court and remand the case with instructions to enter judgment consistent with this opinion.

_____