HOCKENBERG EQUIPMENT
COMPANY, Appellee,

v.

HOCKENBERG'S EQUIPMENT & SUP-
PLY COMPANY OF DES MOINES,
INC., Hockenbergs Equipment & Supply
Company, Inc., and Becker Equipment
Company, Appellants.

No. 92–1725.

Supreme Court of Iowa.

Dec. 22, 1993.

Rehearing Denied Jan. 20, 1994.

William J. Schadle, West Des Moines, for appellants.

David A. Tank and Diane M. Stahle, Des Moines, of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This appeal arises out of a settlement contract between two competing restaurant equipment suppliers that limited the kind of

advertising and marketing in which the defendants could engage. The defendants, conceding that they breached the contract, appeal the district court's award to plaintiff of punitive damages, a permanent injunction, and attorney fees. We affirm in part and reverse in part.

I. *Background facts and proceedings.* During the 1960s and 1970s, Hockenberg Fixtures and Supply Company did business in Omaha, Des Moines, and Davenport as a commercial food service and equipment concern. After a series of commercial transformations, two groups emerged out of the old Hockenberg company. The first consisted of defendants Hockenberg's Equipment & Supply Company of Des Moines, Inc., Hockenbergs Equipment & Supply Company, Inc., and Becker Equipment Company ("Omaha Hockenbergs"). The second was plaintiff Hockenberg Equipment Company ("Des Moines Hockenbergs").

Both the Omaha Hockenbergs and the Des Moines Hockenbergs remained in the restaurant equipment supply business. In 1989 the Omaha Hockenbergs began doing business in central Iowa, selling to many of the Des Moines Hockenbergs' customers. This apparently caused some customers to confuse the Omaha Hockenbergs with the Des Moines Hockenbergs. Therefore, plaintiff Des Moines Hockenbergs filed a lawsuit on April 4, 1990, alleging common law trade name infringement and seeking temporary and permanent injunctions to prohibit the Omaha Hockenbergs from doing business under the Hockenberg name in central Iowa. The parties resolved this lawsuit by way of a Settlement Agreement and Mutual Release ("settlement agreement") entered into December 30, 1990.

In the settlement agreement, defendant Omaha Hockenbergs agreed that they would no longer do business in central Iowa using the words "Hockenberg" or "Hockenberg's" as any part of their business name. The defendants also agreed that if they mailed any promotional materials into Iowa from Nebraska, they would include a disclaimer in a specified typeface to let potential customers know that the defendants had no affiliation with plaintiff Des Moines Hockenbergs.

The defendants further agreed that any breach of the agreement would result in "great and irreparable harm" to the Des Moines Hockenbergs. Such breach, the agreement stated, would leave the Des Moines Hockenbergs with no adequate remedy at law and would therefore entitle them to injunctive relief against the Omaha Hockenbergs.

Despite this agreement, the Omaha Hockenbergs continued to send materials into central Iowa using the Hockenberg name without the proper disclaimer.

Plaintiff Des Moines Hockenbergs therefore brought the present suit for damages against the Omaha Hockenbergs and obtained a temporary injunction against their breach of the settlement agreement's terms. The Omaha Hockenbergs, however, continued to violate the terms of the agreement up to the time of trial.

Some aspects of the present action were tried at law to a jury and some in equity to the court.

After trial, the jury found by special verdict that the Omaha Hockenbergs breached their contract with plaintiff Des Moines Hockenbergs and awarded plaintiff one dollar in compensatory damages.

The jury further found that the conduct of the defendants constituted willful and wanton disregard of the rights of another but that the defendants did not direct this conduct specifically at the plaintiff. In response to the plaintiff's motion for judgment notwithstanding the verdict, the district court later set aside this portion of the verdict, ruling that if the defendants had engaged in wrongful conduct, it was directed specifically at the plaintiff.

On the basis of its finding of willful and wanton conduct by the defendants, the jury awarded, and the court granted judgment to the plaintiff for, a total of $5000 in punitive damages. The district court also issued a permanent injunction against the Omaha Hockenbergs forbidding them from breaching the terms of the settlement agreement. Finally, because of the jury's finding of willful and wanton conduct, the district court awarded attorney fees to the plaintiff. The

court denied defendants' posttrial motions for a new trial and judgment notwithstanding the verdict.

On appeal, defendants Omaha Hockenbergs contend that the district court erred (1) in allowing the jury to award the plaintiff punitive damages and entering judgment on an excessive verdict; (2) in granting injunctive relief against defendants; and (3) in granting plaintiff's motions for attorney fees.

II. *Punitive Damages.* Defendants Omaha Hockenbergs assert that the trial court erred in allowing the jury to consider awarding plaintiff punitive damages. They argue that no legal basis existed for such an award, and even if one did, the jury's award in this case impermissibly exceeded its award of actual damages. We disagree.

Our review of this matter is for correction of errors at law. Iowa R.App.P. 4. When reviewing defendants' motion for judgment notwithstanding the verdict, we ask

> whether [the] evidence, taken in the light most favorable to the party resisting the motion, regardless [of] whether the evidence was contradicted, and taking every legitimate inference that might be fairly or reasonably deducted therefrom, showed that the movant was entitled to a directed verdict at the close of all evidence.

*Suss v. Schammel,* 375 N.W.2d 252, 255 (Iowa 1985); Iowa R.Civ.P. 243(b).

■■■ A. We first consider the legal basis for the jury's punitive damage award. Under Iowa Code section 668A.1 (1991), to receive punitive damages, plaintiff must prove by a preponderance of clear, convincing, and satisfactory evidence that the defendant's conduct amounted to a willful and wanton disregard for the rights of another. Thus, merely objectionable conduct is insufficient to meet the standards of section 668A.1. *Beeman v. Manville Corp. Asbestos Disease Compensation Fund,* 496 N.W.2d 247, 255 (Iowa 1993). To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts. *Id.*

■■■ Defendants Omaha Hockenbergs correctly point out that a breach of contract alone, even if intentional, will not form the basis for punitive damages. *Suss,* 375 N.W.2d at 255. But we will uphold an award of punitive damages when conduct breaching a contract also constitutes an intentional tort, committed maliciously, that meets the standards of section 668A.1. *Cf. Pogge v. Fullerton Lumber Co.,* 277 N.W.2d 916, 919–20 (Iowa 1979) (pre-section 668A case).

■■■ An award of actual damages, however, is not necessary to support an award of punitive damages. *Pringle Tax Serv., Inc. v. Knoblauch,* 282 N.W.2d 151, 154 (Iowa 1979). The plaintiff need only show that the defendant actually caused plaintiff some injury to sustain a verdict for nominal compensatory damages (for example, one dollar) and punitive damages. *Id.* at 153–54; *see Sundholm v. City of Bettendorf,* 389 N.W.2d 849, 853 (Iowa 1986) ("Some actual damages are necessary to support a claim for punitive damages.").

■■■ The jury in this case found that defendants breached their contract and awarded plaintiff one dollar in nominal damages. This award constitutes a showing of actual damages that the jury could supplement with a punitive damage award if it concluded that the defendants engaged in tortious conduct that rose to the standards of section 668A.1. Here, the jury found that the defendants indeed intentionally interfered with the plaintiff's prospective business advantage. The jury further concluded that defendants' tortious conduct amounted to the willful and wanton disregard of the rights of another. The court, in a judgment notwithstanding the verdict, set aside the jury's curious finding that the defendants' conduct was not directed specifically at the plaintiff. That ruling has not been assigned as error on appeal by defendants.

We believe that the evidence substantially supports the conclusion that the plaintiff made a showing of actual damages. Defendants Omaha Hockenbergs' marketing activities in central Iowa caused confusion and lost staff time for the Des Moines Hockenbergs. Customers mistakenly sent them orders based on the sales information of the Omaha Hockenbergs, forcing the Des Moines Hock-

enbergs to devote their attention to resolving these problems. These interruptions amounted to some actual damage, which in turn provided sufficient ground for the jury to consider an award of punitive damages.

■ We further believe substantial evidence supported the amount of the award the jury made. The defendants not only breached the settlement agreement but also violated the district court's temporary injunction that the court granted when the plaintiff filed its petition. Moreover, the record contains substantial evidence of the Omaha Hockenbergs' persistent course of conduct in their refusal to abide by the settlement agreement or the injunction. This attitude was reflected in the testimony of Charles Becker, one of the principals of the Omaha Hockenbergs:

Q. Would you agree with me that the use of the form with the Hockenberg name on it violates that injunction?

A. To some degree I suppose it does.

. . . .

Q. You knew what your forms were and you knew you couldn't have the term Hockenbergs on it?

A. That's correct.

Q. You knew what you were doing?

A. That's correct.

We therefore conclude that substantial evidence supported the jury's finding that the defendants' conduct was willful and wanton under this record, furnishing an adequate basis for an award of punitive damages.

■ B. The defendants also contend that even if a legal basis existed for the punitive damages award, the amount of that award impermissibly exceeded the actual damages of one dollar. We reject this claim.

The United States Supreme Court has rejected an approach to punitive damages "that concentrates entirely on the relationship between actual and punitive damages. It is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused. . . ." *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. —, —, 113 S.Ct. 2711, 2721–22, 125 L.Ed.2d 366, 381 (1993) (upholding an award of punitive damages 526 times larger than the award of actual damages). We believe our approach reflects this test. In *Pringle*, for instance, we considered the plaintiff's showing, not the award, of actual damages, in upholding a punitive damages award of $2500. *Pringle*, 282 N.W.2d at 155. The plaintiff's showing of actual damages in *Pringle*, although not "potential harm," constituted a measure of harm analogous to—and perhaps more concrete than—the threat of "potential harm" that the U.S. Supreme Court observed in *TXO*.

Here, we believe that plaintiff Des Moines Hockenbergs has shown, in support of its $5000 punitive damage award, both *Pringle*-type actual damages (that is, damages the jury was unable to assess) and "potential harm" as discussed in *TXO*. Plaintiff presented persuasive evidence that defendants' marketing activities interrupted its day-to-day business activities over a period of several months. Although it was unable to determine precise amounts, the defendants' conduct appears to have caused plaintiff to lose a significant amount of business revenue and staff time. Moreover, we believe that the defendants Omaha Hockenbergs' conduct, if left unchecked, could have cost the Des Moines Hockenbergs much more in lost time and business. The punitive damage award should serve to deter defendants from future violations of the agreement in addition to punishing them for their past behavior. We believe that it was not excessive under this record.

■ III. *Permanent injunction.* Defendants Omaha Hockenbergs assert that the district court erred in permanently enjoining them from violating the terms of the settlement agreement. Defendants contend that because the jury only awarded plaintiff one dollar in actual damages, plaintiff suffered no irreparable harm that would justify an injunction. We disagree.

This issue was tried in equity and decided by the court on the same evidence presented to the jury on the issues tried at law. Our review on this issue is de novo. Iowa R.App.P. 4.

A party is entitled to a permanent injunction if proof exists that the injunction would prevent irreparable harm and if the party has no adequate remedy at law. *Presto–X–Co. v. Ewing*, 442 N.W.2d 85, 89 (Iowa 1989). A court, however, should grant an injunction "with caution and only when clearly required." *Id.* (quoting *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 755 (Iowa 1981)).

Plaintiff Des Moines Hockenbergs made a convincing showing at trial that without the injunction it would suffer irreparable harm. First, defendants have made no assurances that they would refrain from breaching the settlement agreement in the future. Charles Becker, a principal of the defendants, testified at trial that "our intention is as soon as the literature [with the name "Hockenberg"] is used up, we will reorder and instruct the printers that [it] has to be omitted." Thus, defendants· had decided that they would rather violate the settlement agreement and temporary injunction than go to the trouble of ordering new forms immediately. Second, and more directly, the defendants conceded breaching the settlement agreement, which provided that breach would result in irreparable harm to the plaintiff and entitle it to an injunction against the defendants. When injunctive relief is part of the remedy that the parties stipulated in their agreement, the district court should issue the injunction. *Presto–X–Co.,* 442 N.W.2d at 89.

In addition to showing that they would suffer irreparable harm, plaintiff Des Moines Hockenbergs established that they had no remedy at law. Such a showing exists when the defendant has threatened repeated misconduct. *See Planned Parenthood of Mid–Iowa v. Maki*, 478 N.W.2d 637, 639–40 (Iowa 1991) ("Generally, an injunction will lie to restrain repeated trespasses so as to prevent irreparable injury and a multiplicity of suits."). Without an injunction, plaintiff Des Moines Hockenbergs may have to bring yet another suit, after already trying twice to restrain the defendants from their use of the Hockenberg name in central Iowa. Defendants Omaha Hockenbergs' concededly persistent conduct in violation of the settlement agreement renders plaintiff's remedy at law meaningless. We therefore conclude that the trial court properly issued the permanent injunction prohibiting the Omaha Hockenbergs from violating the terms of the settlement agreement.

IV. *Common law attorney fee award.* By special verdict the jury found that defendants' conduct constituted willful and wanton disregard for the rights of another. The court found that the conduct was directed specifically at the plaintiff. Relying on that finding, the district court granted attorney fees to plaintiff based on the request in a portion of plaintiff's petition and a posttrial motion. Defendants contend the court erred because there was no statutory or written contract provision on which to base such an award and because their breach of the settlement agreement did not rise to the level of culpability necessary to justify a common law attorney fee award. Plaintiff argues that the jury's finding that the defendants engaged in willful and wanton conduct warrants an award of attorney fees and that substantial evidence supports the jury's finding.

The determination of a common law attorney fee award rests in the court's equitable powers. *See Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 257–58 n. 30, 95 S.Ct. 1612, 1621–22 n. 30, 44 L.Ed.2d 141, 153 n. 30 (1975). Therefore, our review of this issue is de novo. Iowa R.App.P. 4.

A party generally has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award. *Suss v. Schammel*, 375 N.W.2d 252, 256 (Iowa 1985). Courts have recognized a rare exception to this general rule, however, "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline*, 421 U.S. at 258–59, 95 S.Ct. at 1622, 44 L.Ed.2d at 154 (citations omitted).

Although we recognize this exception, the exact standard is not clear. Cases involving attorney fees typically involve a claim for punitive damages as well, and the standards for the two remedies have often

overlapped. *See generally* 22 Am.Jur.2d *Damages* § 808, at 856–57 (1988).

For instance, in *Dorris v. Miller*, 105 Iowa 564, 568, 75 N.W. 482, 483 (1898), we applied the same standard to both remedies. We held if the jury finds that the defendant's acts are "tainted by fraud, malice, or insult," the jury may award punitive damages and, in so doing, may include attorney fees in its award. *Id.*

We distinguished the standards in *Kuiken v. Garrett*, 243 Iowa 785, 800, 51 N.W.2d 149, 158 (1952). In that case, we held that an award for punitive damages required a showing that the defendant's conduct was "oppressive and tinctured with legal malice." *Id.* To receive attorney fees, we required a showing of "connivance" and "wrongful interference" with the plaintiff's rights. *Id.* at 801, 51 N.W.2d at 158–59 (citing *Harmont v. Sullivan*, 128 Iowa 309, 317, 103 N.W. 951, 954 (1905)).

Our most recent treatment of the issue suggests that the recovery of attorney fees requires a showing of culpability beyond the showing required for punitive damages. In *Suss*, we concluded that to recover punitive damages, the plaintiff must show a "willful or reckless disregard" for the plaintiff's rights. 375 N.W.2d at 255. For recovery of attorney fees, we cited both *Kuiken*'s "oppressive and tinctured with legal malice" standard as well as the "connivance" standard. *Id.* at 256. Because "legal malice" denotes the "willful or reckless disregard for the rights of another," *Mills v. Guthrie County Rural Elec.*, 454 N.W.2d 846, 849 (Iowa 1990), we believe *Suss* enunciated a standard for attorney fees that required a showing of something beyond "legal malice," namely, "connivance" or "oppression."

The enactment of Iowa Code chapter 668A, 1986 Iowa Acts ch. 1211, § 42, displaced all these cases with respect to the standard for recovery of punitive damages. Under section 668A.1, the plaintiff seeking a punitive damage award must prove that the defendant's conduct amounted to a willful and wanton disregard for the rights of another. A defendant who takes actions with no regard to their consequences exemplifies the conduct to which this standard applies. *Beeman*, 496 N.W.2d at 255.

Section 668A.1 did not address the question of the proper standard for recovery of attorney fees. Although we acknowledge the potentially conflicting rules of our prior cases concerning attorney fees, we believe that our precedents, especially *Harmont, Kuiken,* and *Suss*, require at the very least a showing that the defendant's culpability exceeded the section 668A.1 standard. For instance, *Suss* required a finding of "oppressive" conduct, which denotes conduct that is difficult to bear, harsh, tyrannical, or cruel. *See, e.g.,* Black's Law Dictionary 1093 (6th ed. 1990); The American Heritage Dictionary 872 (2d College Ed.1985). Under *Harmont* and *Kuiken,* the standard required "connivance," which is defined as "voluntary blindness [or] an intentional failure to discover or prevent the wrong." Black's Law Dictionary at 303. These terms envision conduct that is intentional and likely to be aggravated by cruel and tyrannical motives. Such conduct lies far beyond a showing of mere "lack of care" or "disregard for the rights of another."

In addition to the distinctions between the different standards, we believe that important procedural distinctions exist between attorney fee and punitive damage awards. Attorney fee awards are a special kind of compensatory damage, and therefore a determination of a motion for attorney fees should not be based on the instruction on punitive damages. *See* 1 Theodore Sedgwick, *A Treatise on the Measure of Damages* § 234, at 470 (9th ed. 1912). Additionally, the determination of an attorney fee award lies within the equitable power of the court, *Alyeska Pipeline*, 421 U.S. at 257–58 n. 30, 95 S.Ct. at 1621–22 n. 30, 44 L.Ed.2d at 153 n. 30, and the court should not delegate its equitable power to the jury. 27 Am.Jur.2d *Equity* § 239, at 802 (1966) ("[I]f a question is one that is peculiarly proper for the court of equity to determine for itself, it should not be submitted to a jury....").

Therefore, a plaintiff seeking common law attorney fees must prove that the culpability of the defendant's conduct exceeds the "willful and wanton disregard for the rights of another"; such conduct must rise to the level

of oppression or connivance to harass or injure another. The trial court thus erred in relying on the jury's punitive damage factual finding in allowing the plaintiff common law attorney fees.

The jury in this case found that the defendants Omaha Hockenbergs engaged in willful and wanton conduct in breaching the settlement agreement. We believe that in so doing, however, the defendants did not engage in oppressive or conniving behavior. They acted with disregard to the rights of plaintiff Des Moines Hockenbergs, but their actions were not harsh, cruel, or tyrannical.

We therefore conclude that the trial court erred in awarding plaintiff attorney fees in this case. Because no such award was justified, there is no merit in plaintiff's claim for appellate attorney fees.

V. *Disposition.* We conclude that the district court did not err in allowing the jury to award the plaintiff punitive damages and that the jury's award was not excessive in light of the evidence in the record. We also conclude that the district court did not err in issuing a permanent injunction against the defendants' continued breach of the settlement agreement. We conclude that the district court erred in awarding plaintiff common law attorney fees. We therefore affirm the judgment of the district court with respect to the punitive damage award and permanent injunction, and reverse its judgment with respect to the attorney fee award.

**AFFIRMED IN PART AND REVERSED IN PART.**