# IN THE COURT OF APPEALS OF IOWA

No. 17-0966
Filed November 21, 2018

**T. ZENON PHARMACEUTICALS LLC, (d/b/a PHARMACY MATTERS),**
    Plaintiff-Appellee/Cross-Appellant,

**vs.**

**WELLMARK, INC.,**
    Defendant-Appellant/Cross-Appellee,

**WELLMARK HEALTH PLAN OF IOWA,**
    Intervenor-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Paul D. Miller, Judge.

A mutual insurance company appeals a damage award for its breach of contract with an Iowa pharmacy and contests the common-law attorney fees. The pharmacy cross appeals on an interest-rate issue. **AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS APPEAL.**

John F. Lorentzen of Nyemaster Goode, PC, Des Moines, and Kevin H. Collins and Sarah J. Gayer of Nyemaster Goode, PC, Cedar Rapids, for appellant.

Anthony Paduano and Jason Joseph Snyder of Paduano & Weintraub LLP, New York, New York, and Richard C. Garberson and Nancy J. Penner of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.

Heard by Vogel, P.J., Tabor, J., and Carr, S.J.*

*Senior judge assigned by order under Iowa Code section 602.9206 (2018).

**TABOR, Judge.**

This appeal marks the second time our court has considered the breach-of-contract dispute between T. Zenon Pharmaceuticals (doing business as Pharmacy Matters) and mutual insurance company Wellmark, Inc. Pharmacy Matters sued Wellmark after the insurer refused to reimburse more than six million dollars in claims for Factor drugs, a blood clotting treatment prescribed to hemophilia patients. Wellmark (and intervenor Wellmark Health Plan of Iowa, Inc. (WHPI)) counterclaimed with allegations Pharmacy Matters breached its contracts.

In the first appeal, we reversed the district court's finding Pharmacy Matters materially breached anti-assignment clauses in the contracts, or, in the alternative, did not provide "covered services" to patients. *T. Zenon Pharmaceuticals, LLC v. Wellmark, Inc.*, No. 14-0769, 2015 WL 9450469, at *15 (Iowa Ct. App. Dec. 23, 2015). We concluded Wellmark breached its contracts with Pharmacy Matters by refusing to reimburse claims submitted for 114 drug shipments. *Id.* We remanded for the district court to determine the proper amount of damages. *Id.* On remand, the district court awarded Pharmacy Matters $6,335,388 in damages and $3,106,313.49 in common-law attorney fees, plus interest on both awards.

In the instant appeal, Wellmark attacks those awards on many fronts. Contesting the damages, Wellmark claims (1) Pharmacy Matters suffered no actual loss; (2) if it did suffer a loss, Pharmacy Matters failed to prove the amount of damages; (3) the district court should have excluded an award of $138,093 to WHPI; and (4) the district court miscalculated interest on the damages. In its cross appeal, Pharmacy Matters asserts the district court should have awarded 10% interest on the unpaid claims under Iowa Code section 507B.4A(2) (2018). Finding

no error in the district court's determination of damages or interest rates, we decline to disturb the awards.

As for common-law attorney fees, Wellmark argues (1) Pharmacy Matters did not specifically plead entitlement to attorney fees; (2) the district court used the wrong standard and, under the correct standard, fees were not warranted; (3) Pharmacy Matters had no obligation to pay attorney fees; and (4) pre-judgment interest was improper. Because Pharmacy Matters did not prove Wellmark's conduct was oppressive or a connivance to harass or injure the pharmacy, we reverse the award of common-law attorney fees.

## I.      Factual Background

Pharmacy Matters entered contracts with Wellmark to provide "covered services" to patients in return for claim reimbursement by the insurer. The covered services at issue entailed the distribution of Factor drugs to twenty-four patients with hemophilia, a blood-clotting disorder. Those patients had insurance plans administered by a Blue Cross Blue Shield Association (BCBSA) licensee, and were clients of Factor Health Management (FHM), a disease-management company and pharmaceutical wholesaler based in Florida.[1]

One of those patients was A.K., a child living in Iowa and insured through hawk-i (Healthy and Well Kids in Iowa). The hawk-i program covered A.K.'s Factor drugs only if obtained from a provider within Wellmark's network. As part of

---

[1] FHM coordinated care for hemophilia patients across the country. Part of that coordination involved ownership of FCS Pharmacy, a Florida-licensed pharmacy possessing a non-resident pharmacy license in Iowa.

coordinating A.K.'s care, FHM searched online for an in-network provider of home-infusion therapy and found Pharmacy Matters in Iowa City.

That pharmacy belonged to Michael Stein, who was its only full-time pharmacist. In July 2008, Pharmacy Matters and FHM entered a "contract pharmacy agreement" to deliver Factor drugs to patients around the country. Because Pharmacy Matters was an in-network provider, the patients could receive the drugs at a lower cost.

To carry out the pharmacy's agreement, Stein received Factor shipments from FCS and dispensed the drugs to the hemophilia patients according to their prescriptions. After shipping the drugs, Pharmacy Matters sought reimbursement from Wellmark. Under its contract with FHM, Pharmacy Matters agreed to pay FHM the entire reimbursement from Wellmark. Then FHM would remit a 1.5% dispensing fee to Pharmacy Matters.

After noticing Stein's submission of a large volume of claims for the expensive Factor drugs, Wellmark launched an investigation into Pharmacy Matters. Wellmark's investigator first met with Stein in November 2008. Stein explained FHM's referral of hemophilia patients to his pharmacy. Wellmark declined to reimburse Pharmacy Matters while its inquiry progressed but advised Stein to continue submitting claims. He did so—filing 118 claims between August 2008 and July 2009. All remained unpaid. Wellmark's reasons for rejecting Stein's claims shifted during its investigation.[2]

---

[2] For a more thorough recitation of the tactics Wellmark used to avoid reimbursing Pharmacy Matters, see *T. Zenon Pharmaceuticals*, 2015 WL 9450469, at *2–4.

After Pharmacy Matters filed its lawsuit, Wellmark finally denied all the claims, alleging Stein did not provide covered services.  In the first appeal, we rejected Wellmark's rationale for denying the claims.[3]  We then remanded for the district court to determine what damages Wellmark owed Pharmacy Matters.  The district court's determination of damages is the subject of this second appeal.

## II.    Damage Award

### A.  Scope and Standard of Review

We review breach-of-contract claims for correction of legal error. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010).  If we find the district court misapplied the law in a manner materially affecting its decision, we will reverse its judgment.  *Id.*  But the district court's factual findings are binding when supported by substantial evidence.  *Id.*

### B.  Actual Loss

As its initial salvo, Wellmark argues the district court erred in failing to find Pharmacy Matters suffered actual loss before calculating the amount of damages.  Wellmark insists our court did not decide Pharmacy Matters incurred damages in the first appeal.  Thus, in Wellmark's view, the district court needed to make a specific finding of actual loss rather than presupposing Wellmark owed some amount in unpaid claims to Pharmacy Matters.  Wellmark asserts on remand the district court could have, and should have, decided Pharmacy Matters was entitled to zero dollars.

---

[3] We held Wellmark responsible for 114 of the 118 claims.  FCS sent four shipments directly to patients in response to health emergencies.  For those shipments, we reasoned Stein could not dispense drugs that never passed through Iowa.  *Id.* at *11.  As a result, we decided Pharmacy Matters was not entitled to reimbursement for those four claims which amounted to $1,025,025.20.  *Id.*

Neither the law nor the procedural history supports Wellmark's premise. The elements of breach of contract include

> (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). In the 2015 appeal, our court decided Wellmark breached its contract with Pharmacy Matters by not paying 114 claims submitted for Factor drugs dispensed by Stein.[4] In doing so, we reversed the district court's order to the contrary. By finding Pharmacy Matters prevailed in its breach-of-contract claim, we necessarily decided it suffered damages as a result of Wellmark's breach.[5]

After finding the breach, we directed the district court to determine what damages Wellmark owed to Pharmacy Matters, consistent with our opinion. The moment our supreme court denied Wellmark's application for further review, our

---

[4] Wellmark asserts Pharmacy Matters suffered no actual loss because it had not yet paid FHM for the Factor drugs, and Pharmacy Matters's contract with FHM included a "pay-if-paid" clause relieving Pharmacy Matters of liability if not reimbursed by the third-party insurer. Wellmark maintains this arrangement ensured Pharmacy Matters incurred no out-of-pocket costs. Thus, Pharmacy Matters was not entitled to recovery. The contract language at issue stated: "Contractor shall not be responsible for payment to FHM for Factor Products in the event that a customer or third party payer denies prior approve adjudication or if prior approval is withdraw after the product has been dispensed for claims prequalified by FHM." Even if this clause could be read as requiring Pharmacy Matters to pay only if paid, Wellmark cites no authority within or outside Iowa—nor did our search reveal any—in which a court determined the breaching party could defend based on an ancillary contract between the non-breaching party and a third party.

[5] Wellmark presented this same argument in the first appeal, offering Stein's lack of damages as an alternate grounds to affirm the district court's ruling in favor of Wellmark. We rejected the argument then, and we reject Wellmark's attempt to relitigate it now.

ruling became binding on the parties. *See Sutton v. Iowa Trenchless, L.C.*, No. 12-0931, 2013 WL 988816, at *3 (Iowa Ct. App. Mar. 13, 2013) (determining district court could not have properly awarded zero dollars in attorney fees when our remand order directed it to "determine the amount of attorney fees" owed); *see also Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) ("Under the law of the case doctrine, an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case."). Because we decided Pharmacy Matters prevailed in its breach-of-contract action, and incurring damage was an element of that action, the district court properly determined its sole responsibility was to calculate the amount of damages owed to Pharmacy Matters.

### C. Substantial Evidence for Amount of Damage Award

*1. Billed versus Contract Amounts.*

Wellmark next argues the district court's award is not supported by substantial evidence. In arriving at the $6,335,388 figure, the district court relied on claim forms submitted by Pharmacy Matters to Wellmark showing the amount billed for the Factor drugs. On appeal, Wellmark contends the district court should have relied on the "contractual amount" instead. Wellmark describes "the lower contractual amount" as the reimbursement Pharmacy Matters "expected to be paid for its claims."[6]

It is true Wellmark mentioned the contract-versus-billed-amount issue during the remand hearing. The insurer suggested Pharmacy Matters

---

[6] Stein testified he billed his "usual and customary rate" for the Factor drugs dispensed, but that Wellmark did "not generally" pay that price when reimbursing claims.

acknowledged in two filings that an "adjustment" of the billed amount would be appropriate. Given those filings, Wellmark maintained it did not have to offer any evidence about "what the adjustments might be."

After evaluating the trial evidence and arguments offered during the remand hearing, the district court decided the billing forms provided a reasonable measure of damages. The district court deducted billed amounts for emergency out-of-state claims, paid claims relating to two patients, and two claims for which Pharmacy Matters did not submit reimbursement forms. In its post-judgment motion, Wellmark argued the billed amount adopted by the district court was inconsistent with our court's decision in the first appeal.[7]

In response to Wellmark's motion, the district court modified its order to deduct a greater amount from the damage award to account for the emergency shipment claims.[8] But the district court also expressed its frustration with Wellmark's belated assertion the contract amounts were the appropriate rate for the damage calculation: "This is the first time in these lengthy proceedings that Wellmark has unequivocally made that statement, despite the Court asking Wellmark's counsel several times what the appropriate reimbursement rates should be." The district court noted that during trial Wellmark's counsel said it could not figure out the expected reimbursement rates "because the claims were stopped."

---

[7] Wellmark highlighted the portion of our holding that Pharmacy Matters was not entitled to reimbursement for the four emergency shipments and noted our reference to the contractual amount for those claims.

[8] The district court's first order deducted the estimated settlement amount, $1,025,025.25, for the claims relating to the emergency shipments. The modification decreased the award by another $130,412.80 so the figure used to deduct the value of the emergency claims tracked the figure used to calculate the total damage award (the "billed" amount).

The bottom line is the district court could reasonably rely on the billed amounts to calculate the damages incurred by Pharmacy Matters. Our contract cases recognize "a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages." *Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (quoting *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998)). Courts cannot award damages if uncertainty or speculation surrounds whether the non-breaching party *sustained* damages. *Id.* But "if the uncertainty merely lies in the *amount* of damages sustained, 'recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.'" *Id.* (quoting *Olson*, 579 N.W.2d at 309) (emphasis added).

Applying that test, the district court observed, the billing statements reflected the pharmacy's "usual and customary price" which was the average wholesale price (AWP) plus a dispensing fee. The AWP is published by the Medispan database.[9] During the remand hearing, Wellmark rebutted these calculations mainly by asserting Pharmacy Matters suffered no loss. Contrary to Wellmark's position, the uncertainty lies not in the pharmacy's suffering of damages from the insurer's breach, but with the amount owed. The amounts billed by Pharmacy Matters formed a reasonable basis from which the court derived the damage award. *See Pavone*, 801 N.W.2d at 495. We affirm on that question.

*2. Damages for claims relating to patient A.K.*

On a smaller scale, Wellmark faults the district court for including $138,093 in the damage award to reimburse Pharmacy Matters for benefits provided to

---

[9] Wellmark's and WHPI's contracts with Pharmacy Matters list the Medispan database as a resource for obtaining average wholesale prices of drugs.

patient A.K. under the hawk-i program, then administered by WHPI.[10] Wellmark refutes responsibility for claims involving patients insured by its affiliate WHPI because Pharmacy Matters failed to establish those damages resulted from Wellmark's breach. The proper result, according to Wellmark, would have been for the district court to hold WHPI responsible as A.K.'s insurer.

We find no error in the district court's inclusion of the claims involving A.K. in the damage award against Wellmark. Pharmacy Matters submitted its claims for the Factor dispensed to patient A.K. to Wellmark, in the same manner it submitted the claims for patients covered by non-intervening insurers. Wellmark was not the coverage provider for any of the patients to whom Pharmacy Matters dispensed the Factor. Wellmark acknowledged it played the same role, as authorized by its contract with Pharmacy Matters, in the dispute over claims relating to A.K.—it reviewed and processed—or here, denied—the claims. Substantial evidence supported the district court's finding that Wellmark's breach of its contract with Pharmacy Matters resulted in the pharmacy's loss on claims involving drugs dispensed to A.K.. *See Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 834 (Iowa 1998).

### D. Damages versus Equitable Remedy

As another reason to reverse, Wellmark contends the district court "exceeded its jurisdiction" by imposing an equitable remedy—specific performance—when Pharmacy Matters sought only damages and suffered no

---

[10] Represented by the same counsel as Wellmark, WHPI successfully moved to intervene in the fall of 2009. WHPI participated in the first appeal. After at first joining Wellmark in the instant action, WHPI voluntarily dismissed its appeal in August 2017, asserting it had "no adverse judgment entered against" it by the district court.

loss. Wellmark believes the district court invoked specific performance by saying the insurer must fulfill its "end of the agreement, i.e., pay for the Factor drugs dispensed by Pharmacy Matters."

Damages don't transform into an equitable remedy just because the party's performance under the contract happens to include reimbursement. *See Berry Seed Co. v. Hutchings*, 74 N.W.2d 233, 237 (Iowa 1956) ("It may therefore be said that whenever one person has in his hands money equitably belonging to another, that other person may recover it by an action for money had and received, and the remedy at law is adequate and complete."). Here, the district court did not order Wellmark to perform its contract with Pharmacy Matters. Instead, the court calculated the damages Wellmark owed for its failure to perform under the contract.[11] For these reasons, we reject Wellmark's assertion the court exceeded its jurisdiction by ordering an equitable remedy for an action at law.

### E. Statutory Interest on the Damage Award

#### 1. Pre-judgment Interest

Next Wellmark assigns error to the district court's imposition of 5% interest "per annum from the date of filing of the petition," under Iowa Code section 535.2.

---

[11] Additionally, Wellmark's argument the damage award exceeded the contractual amount, discussed above, illustrates the absence of an equitable remedy. Had the remedy been specific performance, Wellmark would have been asked to process the claims and determine the reimbursement amount. As it stands, the court calculated the amount. *See Davenport Osteopathic Hosp. Ass'n v. Hosp. Serv., Inc.*, 154 N.W.2d 153, 162–63 (Iowa 1967) ("The question now to be resolved is whether the refusal by Blue Cross to reimburse Hospital pursuant to terms of the contract was in fact a breach. . . . We are satisfied any failure by Blue Cross to pay in accord with the reimbursement cost formula contained in the original contract constituted a breach. Under the existing factual situation Hospital had the right to, (1) ask damages under the terms of the contract; (2) disaffirm the contract and ask for value of services performed; or (3) ask specific performance.").

Wellmark misreads the district court's statement as directing post-judgment interest accrual at a pre-judgment rate.

Iowa Code section 535.2(1) sets a 5% pre-judgment interest rate on "money due by express contract" and "money after the same becomes due." Pre-judgment interest accrues from the date the action begins to "prevent persons obligated to pay money to another from profiting through delays in litigation." *Hughes v. Burlington Northern R.R. Co.*, 545 N.W.2d 318, 321 (Iowa 1996). Here, the district court properly assigned the statutorily authorized pre-judgment interest to accrue from the date of filing the petition. After the court entered judgment, the accumulated pre-judgment interest aggregated with the contract judgment, and that aggregated amount "began to draw post[-]judgment interest under Iowa Code section 535.3, just like any civil judgment." *See Wilson v. Farm Bureau Mut. Ins. Co.*, 770 N.W.2d 324, 334 (Iowa 2009).

### 2. Clean Claim Interest

Pharmacy Matters cross-appeals, alleging the district court erred in refusing to award 10% annual interest on unpaid claims under Iowa Code section 507B.4A. Pharmacy Matters argues Wellmark must pay interest because the claim submitted by Pharmacy Matters was "clean," defined by the code as "a properly completed paper or electronic billing instrument containing all reasonably necessary information." Iowa Code § 507B.4A(2)(b). The code provides payment of a clean claim "shall include interest at the rate of ten percent per annum when an insurer . . . fails to timely[12] pay a claim." *Id.* § 507B.4A(2)(d).

---

[12] The corresponding administrative code provision provides: "Insurers subject to this subrule shall either accept and pay or deny a clean claim for health care benefits under a

Our supreme court does not recognize a private cause of action under chapter 507B. *See Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, (Iowa 1991); *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 42–43 (Iowa 1982); *see also Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 254–55 (Iowa 2012) ("[Chapter 514] provided the insurance commissioner with specified administrative powers to investigate, adjudicate, remedy, and sanction prohibited acts of unfair practices."). Only the Insurance Commissioner may impose the "prompt pay" remedies contained within section 507B.4A. To find otherwise would defy precedent and invade the province of the Commissioner. *See Bates*, 467 N.W.2d at 259–60; *Seeman*, 322 N.W.2d at 42–43; *Mueller*, 818 N.W.2d at 254–55. The district court thus properly declined the pharmacy's request to impose 10% interest on the reimbursement payments under Iowa Code section 507B.4A(2).

## III. Attorney Fees

### A. Scope and Standard of Review

We review an award of common law attorney fees de novo. *Wolf v. Wolf*, 690 N.W.2d 887, 896 (Iowa 2005) (citing *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993)).

### B. Analysis

Wellmark asks us to reverse the award of common law attorney fees because the district court applied the wrong standard.[13] Courts generally award

---

benefit certificate or policy issued by the insurer within 30 days after the insurer's receipt of such claim." Iowa Admin. Code r. 191-15.32(2)(a).

[13] Wellmark advances several objections to the district court's award of attorney fees. Because we find Pharmacy Matters failed to prove Wellmark acted with oppression or connivance, we need not address Wellmark's remaining arguments.

attorney fees only when authorized by statute or contract. *See Hockenberg Equip. Co.*, 510 N.W.2d at 158. But Iowa courts recognize a rare exception when a plaintiff proves "the culpability of the defendant's conduct exceeds the 'willful and wanton disregard for the rights of another.'" *Id.* at 159. "[S]uch conduct must rise to the level of oppression or connivance to harass or injure another." *Id.* at 159–60. "Oppressive conduct" is "difficult to bear, harsh, tyrannical, or cruel." *Id.* at 159. "Connivance" means either willful blindness or intentional failure to discover or prevent wrongdoing. *See Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 475 (Iowa 2017). These terms envision more than bad faith. *Id.*

In awarding attorney fees, the district court emphasized the lengthy nature of the proceedings:

> the complexity of this case; the responsibility assumed by Plaintiff's attorneys; the underlying subject matter of the claims themselves involving 24 patients, mostly children, who required the [f]actor drugs to treat a rare inherited disease of hemophilia and prevent possible fatal bleeds; the length of this claim process and litigation and expense incurred by Plaintiff in enforcing its rights under the contract; the results obtained . . . [.] [I]t is not possible to even remotely make Pharmacy Matters "whole again" without allowing Pharmacy Matters to recover an amount sufficient to pay their attorneys.

All this may be true, but Pharmacy Matters did not prove Wellmark's conduct reached levels of oppression or connivance. *See id.* Pharmacy Matters cites Wellmark's shifting justifications for denying claims, and alleges Wellmark falsely denied knowledge of reimbursement rates. Those actions may display bad faith, but do not exhibit an intentional gambit to harass or harm Pharmacy Matters. *See id.* at 475 (citing *Wolf*, 690 N.W.2d at 896).

On our de novo review, we find Wellmark's conduct did not satisfy the *Hockenberg* test. *See id.* Wellmark zealously litigated its case, but it did not

engage in harsh, cruel, or tyrannical conduct.[14]  For these reasons, we consider the award of common law attorney fees unjustified.[15]

To recap, we affirm the damage award and reverse the attorney fee award.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS APPEAL.**

---

[14] As indicia of the insurer's misconduct, Pharmacy Matters also points to Wellmark's accusations that Stein committed insurance fraud, its effort to submit Stein's criminal indictment into evidence, and its continued references to Stein's alleged dishonesty. While advancing toward the line, these acts by Wellmark do not cross into the heightened standard of oppression or connivance to harass or injure Pharmacy Matters.

[15] The district court's rejection of punitive damages bolsters our conclusion.  The level of culpability meriting common law attorney fees exceeds the willful-and-wanton-disregard standard required to prove punitive damages.  *See Williams v. Van Sickel*, 659 N.W.2d 572, 579 (Iowa 2003).