# IN THE COURT OF APPEALS OF IOWA

No. 18-2161
Filed January 9, 2020

**GERI DOYLE and GERI DOYLE, INC.,**
    Plaintiffs-Appellants,

**vs.**

**MARK OTTO and OTTO LAW OFFICE, PLLC,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Jasper County, Martha L. Mertz, Judge.

The plaintiff appeals the grant of summary judgment to an attorney on her malpractice claims. **AFFIRMED.**

Billy J. Mallory of Brick Gentry, P.C., West Des Moines, for appellants.

Thomas M. Boes and Janice M. Thomas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Real estate brokerage owner Geri Doyle split from her business partner, Caren DeVoe. As part of DeVoe's buyout, Doyle signed a covenant prohibiting her from competing in the real estate business in Jasper County for ten years. When Doyle joined a different real estate company and began advertising properties in Jasper County, DeVoe reminded her of the noncompete covenant. Doyle responded by seeking a declaratory judgment that the noncompete clause was unenforceable. Doyle also pursued malpractice claims against Mark Otto, the attorney who drafted the covenant and alleged other tort claims against the attorney and DeVoe.[1] The district court granted Otto's motion for summary judgment. We uphold the grant of summary judgment but on a different ground than embraced by the district court.

## I. Facts and Prior Proceedings

In 2003, Doyle and DeVoe were real estate agents and broker associates working for a company in Newton. After several years, they decided to form their business. They opened Doyle & DeVoe, LLC in 2005 and Doyle & DeVoe Properties, LLC in 2010. In 2015, Doyle sold her interest in the companies to DeVoe's husband, Philip Clevenger. Together, the parties hired attorney Mark Otto to draft the purchase agreement. Otto previously had represented both parties in personal and business matters.

---

[1] Plaintiffs in this case are Geri Doyle and Geri Doyle, Inc.; we refer to them jointly as Doyle. The defendants remaining in the case are Mark Otto and Otto Law Office, PLLC; we refer to them as Otto. The other defendants were Philip Clevenger, Caren DeVoe, Doyle & DeVoe Properties, LLC, and Doyle & DeVoe, LLC; we refer to them jointly as Clevenger and Devoe.

The parties disagree about how contract negotiations unfolded. Otto asserts Doyle negotiated the terms independently with Clevenger and Devoe and Otto merely memorialized those terms for the parties to sign. Doyle recalls she engaged in some discussions with Clevenger and DeVoe, and further talks ensued after they hired Otto. Doyle testified in her deposition she agreed to have Otto act as their attorney. She did not ask Otto to represent her alone nor did she compensate him. But she assumed he was "going to watch over my best interest." She also testified the parties arrived at all the important terms by talking in person. Otto was not present during those discussions. She said Clevenger "gave [Otto] the terms" after she and Clevenger negotiated them.

Otto prepared a mutual letter of intent reducing those terms to a formal writing. In an April 20 email, he circulated the draft along with a waiver-of-conflict form. Otto asked the parties to inform him of any changes. The first draft included a provision that Doyle would "covenant not to compete in the business of Doyle & DeVoe LLC for a period of ten (10) years in the Iowa Counties of Jasper, Poweshiek, Marion, Marshall," and some parts of Polk County. This provision appeared under the "Consideration" heading.

After receiving the draft, Doyle called Clevenger, and they agreed to limit the regional restriction to Jasper County. The parties communicated this and other changes to Otto. On April 21, Otto circulated an updated draft with the new language setting out "a covenant not to compete in the business of Doyle & DeVoe LLC for a period of ten (10) years in Jasper County."

The next day, Doyle spoke to Otto, expressing her dissatisfaction with the length of the noncompete clause. She testified, "[H]e says, most likely if this went

to court ever it would not hold up maybe two to three years." She explained the parties agreed to ten years because Clevenger and DeVoe insisted on that term as a condition of the sale.

Otto testified he told both parties "ten years was on the outside of what is normal and what a court might allow." He thought, depending on the circumstances, "a court might reform a ten-year covenant" because "most covenants are two to three years" and "[d]epending on the circumstances, three to five may be appropriate" but a decade "was on the outside of what I've seen or what I've perceived as reasonable."

Despite these discussions, the parties made no further edits to the noncompete clause. On April 23, Otto sent the parties a revised letter of intent. Doyle read the draft and suggested no further changes. The parties all signed the letter, which included the following language:

> This letter of intent does not constitute or create, and shall not be deemed to constitute or create, any legally binding or enforceable obligation on the part of either party to this letter of intent, no such obligation shall be created, except by the execution and delivery of the purchase agreement containing such terms and conditions of the proposed transaction as shall be agreed upon by the parties, and then only in accordance with the terms and conditions of such purchase agreement.

Following the signing, Otto drafted a "Final Purchase Agreement" incorporating the letter's terms in almost identical language. He circulated the draft on April 30, and the parties signed on May 1. The agreement contained this clause: "Geri hereby gives her covenant not to compete in the business of Doyle & DeVoe LLC for a period of ten (10) years in Jasper County." Doyle admitted she did not read the final draft of the purchase agreement before signing it.

Otto, aware of the potential conflict of interests in representing both parties to the purchase agreement, obtained a waiver of conflict, signed by all the parties on April 27, 2015. The waiver stated:

> The undersigned parties have each requested representation by Otto Law Office, PLLC in a matter involving the sale of business interest transaction between [Doyle] and [Clevenger and DeVoe]. The parties have negotiated their own transaction and [Otto] is preparing the purchase agreement and related documents as per the parties' mutual agreement of terms. The parties hereby acknowledge that [Otto's] involvement on behalf of all parties presents a conflict of interest. Notwithstanding the conflict of interest, the undersigned hereby state that they are fully informed about this conflict of interest, waive said conflict of interest, and consent to [Otto's] representation of all parties involved in this transaction. The undersigned further acknowledge that this waiver is being made voluntarily, of the parties' own freewill, and without threat or coercion.

After selling her interest, Doyle worked for Clevenger and DeVoe as an independent contractor for about eighteen months. Then Doyle joined an agency in Polk County and began selling real estate, some of which was located in Newton. Hearing that, DeVoe and Clevenger hired Otto to remind Doyle that part of the consideration for the purchase agreement was that she not compete with their business in Jasper County. Otto sent Doyle letters on December 5, 2016; December 30, 2016; and February 17, 2017. Each letter insisted she abide by her covenant not to compete.

Rather than abiding, Doyle petitioned for declaratory judgment. She asked the district court to find the noncompete clause was unenforceable (Count I) and to reform the noncompete clause to a two-year maximum (Count II). Doyle sought damages against Otto for negligence (Count III), breach of a contract for legal services (Count IV), and breach of fiduciary duties (Count V.) And she sought damages against Otto, as well as DeVoe and Clevenger for fraudulent and

negligent misrepresentation and fraudulent concealment (Count VI), and conspiracy and concert of action (Count VII). Finally Doyle sought punitive damages (Count VIII) against all the defendants.

Otto sought summary judgment. Following a hearing, the court found the noncompete clause was enforceable but not for ten years. The court then granted summary judgment on all counts, finding Doyle could not prove her damages.

> Regardless of the nature of the claim, Doyle must be able to establish by a preponderance of the evidence that Otto's action or a failure to act resulted in actual injury, loss, or damages. In view of the enforceability of the covenant not to compete, Doyle cannot prove an actual injury, loss, or damages because the contract's noncompete clause bars her from competing with Defendants.

Doyle appeals only the grant of relief to Otto.

## II. Scope and Standard of Review

We review a summary judgment ruling for correction of errors at law. *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). We will uphold the ruling if the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A "genuine issue of material fact" exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). We consider the evidence in the light most favorable to the nonmoving party and entertain every legitimate inference that we can reasonably deduce from the summary-judgment record. *UE Local 893/IUP v. State*, 928 N.W.2d 51, 59 (Iowa 2019).

**III. Discussion**

Before digging into Doyle's appellate claims, we must clarify what she is not challenging. Although Doyle mentions the enforceability of the noncompete clause, she does not contest the district court's conclusion it is enforceable for a duration of less than ten years.[2] Doyle pursues only the grant of summary judgment on her claims against Otto. Of those, Doyle abandons the breach-of-legal-contract and conspiracy counts. The remaining allegations include negligence, breach of fiduciary duties, and fraudulent misrepresentation, as well as a request for punitive damages.

**A.      Negligence**

Negligence in legal representation means failing to use the skill, care, and diligence commonly possessed and exercised by lawyers of ordinary ability and capacity. *See Skadburg v. Gately*, 911 N.W.2d 786, 792 (Iowa 2018). The client must show: "(1) a duty arising from the established existence of an attorney-client relationship; (2) the attorney breached that duty; (3) the attorney's breach was the proximate cause of injury to the client; and (4) the client suffered actual damage, injury, or loss." *Id.* (quoting *Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016)). The injury must be an "actual loss" and not speculative or "the threat of future harm." *Id.* (quoting *Vossoughi v. Polaschek*, 859 N.W.2d 643, 650 (Iowa 2015)).

---

[2] We do not address the proper duration for the clause because the district court did not reach a conclusion on that issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Although the district court granted summary judgment by finding insufficient evidence of damages, we choose to affirm on the breach-of-duty ground. *See Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 97 (Iowa 2012) (explaining appellate court may affirm summary judgment on any ground urged on appeal that was raised below). Even viewing the summary-judgment record in the light most favorable to Doyle, we find no evidence Otto breached any duty to her. At bottom, Doyle, DeVoe, and Clevenger communicated their agreement to Otto who memorialized it in writing.[3] When asked for advice on the enforceability of the covenant not to compete, he told the parties that—based on his professional experience—it was enforceable but not for a term of ten years. And, if put before a court, the court would likely reform the contract. He estimated an enforceable duration between two and five years.

Otto's opinion was consistent with existing case law.[4] *See, e.g.*, *Rasmussen Heating and Cooling, Inc. v. Idso*, 463 N.W.2d 703, 704–05 (Iowa 1990) (finding a ten-year noncompete clause was unreasonable in length, noting

---

[3] Otto asserts his scope of representation was limited and offers the waiver of conflict as evidence. Nothing in the waiver of conflict required the parties to acknowledge a limitation in the duties Otto owed his clients. True, the waiver of conflict stated "the parties have negotiated their own transaction" and Otto was "preparing the purchase agreement and related documents as per the parties' mutual agreement of terms." But it waived claims based on the conflict of interest only. It did not absolve Otto of the duty to be an attorney—for both parties. It did not absolve him of the duty to give accurate advice. Still, as we conclude below, when Doyle asked Otto for guidance on the enforceability of the noncompete clause, and he explained his prediction, he was giving competent legal advice.

[4] In analyzing whether a noncompete covenant is enforceable, we balance three factors: (1) the reasonable necessity of the restriction to protect the business; (2) the reasonableness of the restriction on the former owner's rights; and (3) any prejudice to the public. *Sutton v. Iowa Trenchless, L.C.*, 808 N.W.2d 744, 749–50 (Iowa Ct. App. 2011).

"[t]ypically, the duration of a disputed covenant ranges from two years to three years," and collecting cases holding the same); *Phone Connection, Inc. v. Harbst*, 494 N.W.2d 445, 449–50 (Iowa Ct. App. 1992) (finding a five-year covenant unreasonably long and affirming modification to a two-year term); *cf. Sutton*, 808 N.W.2d at 751 (finding a seven-year noncompete term was not unreasonable under the circumstances).

Even after hearing Otto's advice, both parties opted to enter the contract, risking litigation over the noncompete clause. When Doyle petitioned to reform the covenant, the district court did—as Otto predicted—find it enforceable but not for ten years. Given these events, Doyle cannot generate a jury question on the breach-of-duty element. As a matter of law, Otto's advice-giving did not constitute a failure to use the skill, prudence, and diligence of a reasonable attorney. *See Skadburg*, 911 N.W.2d at 792.

Nevertheless Doyle complains Otto did not sufficiently advise her before she signed the noncompete covenant. But nothing in the record shows Doyle did not understand the term when she signed the contract. In fact, the record evidence is to the contrary. She is a sophisticated real estate agent who has been helping buyers and sellers negotiate contracts for years. The noncompete covenant was in the letter of intent through multiple drafts, which she approved, though Doyle admitted she did not read the final purchase agreement before signing it. She successfully negotiated the geographic limits down to just Jasper County. She tried to negotiate a shorter noncompete term, but DeVoe and Clevenger refused to consider less than ten years. Doyle admitted she "could have walked away from the deal" but did not. The record evidence would support a conclusion—as a

matter of law—that Doyle understood the contract term.[5]   There is no genuine issue of material fact that Otto failed to carry out his duty as the attorney representing the parties in the underlying contract matter.[6]

### B.   Breach of Fiduciary Duty

Her claim of breach of a fiduciary duty requires Doyle to show the existence of a fiduciary relationship and a breach of those duties causing damages.  *See Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 52 (Iowa 2003).  Some relationships, including that between an attorney and client "necessarily give rise to a fiduciary relationship."  *Id.* (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)). Like Doyle's negligence count, her fiduciary-duty claim fails on the breach element. Otto demonstrated as a matter of law that he did not violate his fiduciary duty in representing her interests in executing the purchase agreement.

### C.   Fraudulent Misrepresentation

To prove Otto engaged in fraudulent misrepresentation or concealment, Doyle had to show seven elements: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury.  *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004).  Our supreme court has described

---

[5] Also on appeal, Doyle claims she understood the noncompete covenant to apply to business activities of the brokerage firm and the opening of a new brick-and-mortar brokerage company in Jasper County, not real estate sales activity.  The district court did not decide this question, so we do not address it here.  *See Meier*, 641 N.W.2d at 537.

[6] To the extent Doyle faults Otto for a conflict of interest, she waived that claim. Her assertion Otto did not sufficiently explain the waiver is contrary to the evidence: she testified she had entered joint representation agreements as a real estate agent and knew what duties an attorney would have to each client in such an arrangement.  She testified she understood her right to obtain the opinion of another attorney but did not do so.

this tort as "narrowly circumscribed" and imposing liability only if a person, in the course of his or her profession, "supplies false information for the guidance of others in their business transactions." *See Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010).

Doyle claims Otto supplied her false information about two matters: the enforceability of the noncompete clause and that the purchase agreement included all terms from the mutual letter of intent. These claims find no support in the summary-judgment record. As discussed above, Otto provided Doyle accurate advice about the enforceability of the noncompete covenant. And she can point to nothing in the final transaction documents at variance from the terms she approved during the negotiations. On this record, Doyle cannot show Otto told her anything false to induce her to sign the contract. *See Lloyd*, 686 N.W.2d at 233. Thus Otto was entitled to summary judgment on this claim.

### D.     Punitive Damages

On her claim for punitive damages, Doyle must show by a preponderance of clear, convincing, and satisfactory evidence that Otto acted with willful and wanton disregard for her rights. *See* Iowa Code § 668A.1(1)(a) (2015). "[M]erely objectionable conduct is insufficient to meet the standards of section 668A.1." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 510 N.W.2d 153, 156 (Iowa 1993). We see no disputed facts in the record to support a finding that Otto engaged in willful disregard of Doyle's rights.

The district court properly granted summary judgment on this and all other malpractice claims against Otto.

**AFFIRMED.**